UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARCY ALTMAN-GUBERNIKOFF and
GEORGE GUBERNIKOFF, M.D.,

                        Plaintiffs,

            - against -

ALAN GARELY, M.D., MOUNT SINAI
SOUTH NASSAU f/k/a SOUTH NASSAU
COMMUNITIES HOSPITAL, JOHN DOE,
M.D., AMERICAN MEDICAL SYSTEMS,
AMERICAN MEDICAL SYSTEMS
HOLDINGS, INC., ENDO
PHARMACEUTICALS, INC., ENDO
PHARMACEUTICALS HOLDINGS, INC.,
and ENDO HEALTH SOLUTIONS, INC.,

                        Defendants.

**ORDER**

20 Civ. 4913 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

                In this action, Plaintiffs Marcy Altman-Gubernikoff ("Altman") and George

Gubernikoff allege medical malpractice claims against Dr. Alan Garely and Mount Sinai South

Nassau (together, "Medical Defendants"), and a number of state law claims against American

Medical Systems ("AMS"), including negligence, strict products liability, breach of express and

implied warranties, negligent infliction of emotional distress, violation of consumer protection

laws, gross negligence, and unjust enrichment.[1]  (Cmplt. (Dkt. No. 11-1))  Plaintiffs' claims arise

from injuries Altman sustained from an implanted pelvic mesh device.

---

[1]  American Medical Systems Holdings, Inc., Endo Pharmaceuticals Inc., Endo Pharmaceuticals
Holdings Inc., and Endo Health Solutions Inc. were voluntarily dismissed on July 13, 2020.
(Dkt. No. 24)

This action was filed on March 13, 2020, in Supreme Court of the State of New York, New York County. (Cmplt. (Dkt. No. 11-1)) On June 30, 2020, AMS removed the case to this Court,[2] asserting diversity jurisdiction under 28 U.S.C. § 1332, and arguing that the non-diverse Medical Defendants had been fraudulently joined, as there is no possibility of recovery against them. (Notice of Removal (Dkt. No. 11) ¶¶ 15, 29)

Plaintiffs have moved to remand (Pltf. Mot. (Dkt. No. 25)), arguing that diversity jurisdiction does not exist, because the Medical Defendants were not fraudulently joined. (Pltf. Br. (Dkt. No. 32)) For the reasons stated below, Plaintiffs's motion to remand will be denied.

## **BACKGROUND**[3]

## I.      **THE PARTIES**

Plaintiffs Marcy Altman-Gubernikoff and George Gubernikoff are citizens of New York. (Cmplt. (Dkt. No. 11-1) at 4)[4]

Defendant Garely is a licensed medical doctor who treated Altman between April 26, 2012 and September 1, 2015. (Id. at 4-5) Dr. Garely has his principal place of business in Rockville Center, New York. (Id. at 5)

---

[2]  The Notice of Removal (Dkt. No. 1) was filed on June 26, 2020, but was rejected because of a filing deficiency. It was refiled on June 30, 2020. (See Dkt. No. 11)

[3]  The Complaint's factual allegations are presumed true for purposes of resolving Plaintiffs' motion to remand. See Salzberg v. Aetna Ins. Co., No. 17 CV 7909 (VB), 2018 WL 1275776, at *1 (S.D.N.Y. Mar. 12, 2018) ("In considering the motion to remand, the Court accepts as true all relevant allegations in the complaint and construes all factual ambiguities in favor of plaintiff."). A court "may also consider the parties' affidavits and attached exhibits in deciding [a] motion to remand." M.S.S. Const. Corp. v. Century Sur. Co., No. 15 CIV. 2801 ER, 2015 WL 6516861, at *1 n.1 (S.D.N.Y. Oct. 28, 2015) (citing Gov't Emp. Ins. Co. v. Saco, No. 12 Civ. 5633 (NGG) (MDG), 2015 WL 4656512, at *3 (E.D.N.Y. Aug. 5, 2015) ("Because [a motion to remand] is a jurisdictional inquiry, a court can look beyond the face of the complaint. . . .")).

[4]  Because the individual paragraphs of the Complaint contain a numbering error, the Court cites to page numbers. The page numbers referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

Defendant Mount Sinai South Nassau owns and operates a medical facility in Oceanside, New York.  (Id.)

Defendant AMS is a Delaware corporation that designs, manufactures, and sells pelvic mesh products.  Pelvic mesh products are medical implants that are intended to treat "stress urinary incontinence and pelvic organ prolapse."  (Id. at 5-7)

## II.    THE COMPLAINT

The Complaint asserts fifteen causes of action.

Plaintiffs' First and Second Causes of Action are brought against the Medical Defendants and allege medical malpractice and vicarious liability.  (Id. at 7-17)  The Complaint alleges that from April 26, 2012 to September 1, 2015, Altman sought care "for certain acute medical complaints"; was diagnosed and treated at Defendant Mount Sinai South Nassau; that Dr. Garely supervised and managed the medical care provided to Altman during this period; and that he "prescribed Actos" for Altman.[5]  (Id. at 8, 10-11, 14)  The Complaint goes on to allege that the Medical Defendants did not "timely evaluate, diagnose and treat" Altman, and that as a result, she "sustained great pain, agony, injury, suffering, disability, hospitalization, . . . mental anguish and emotional distress."  (Id. at 14-15)[6]

---

[5]  The Complaint does not allege that Altman's injuries were caused by Actos.

[6]  The Complaint does not describe in any fashion Altman's medical complaints, diagnosis or treatment.  Nor does the Complaint allege that Altman received a pelvic mesh implant, or that any Defendant recommended that she receive a pelvic mesh insert.

In briefing their remand motion, Plaintiffs assert that Dr. Garely implanted an AMS Monarc sling mesh system into Altman at Mount Sinai South Nassau (Pltf. Br. (Dkt. No. 32) at 2), and that Altman underwent "revision surgery" concerning the mesh implant on September 9, 2019. (Pltf. Reply (Dkt. No. 33) at 5)  The Court will not consider the additional facts alleged in Plaintiffs' briefs.  See Maguire v. A.C. & S., Inc., 73 F. Supp. 3d 323, 328 (S.D.N.Y. 2014) (noting, in connection with remand motion, that a plaintiff may not amend complaint by pleading new facts in a brief).

Although the Complaint does not plead facts concerning the implantation of a pelvic mesh in Altman, the Complaint states that she suffered "severe adverse reactions to [a pelvic] mesh [implant]," including "inflammation of the pelvic tissue." (Id. at 21)  The Complaint also asserts that Altman underwent "extensive medical treatment, including, but not limited to, operations to locate and remove [the] mesh [implant], operations to attempt to repair [her] pelvic organ[], tissue, and nerve damage, the use of pain control and other medications, injections into various areas of the pelvis, spine, and the vagina, and operations to remove portions of the female genitalia." (Id. at 26)  Plaintiffs further allege that Altman "has developed and been diagnosed with bladder cancer" as a result of complications from the pelvic mesh implant.  (Id. at 33)

The Complaint's remaining causes of action are brought against AMS, and include claims for negligence, gross negligence, strict products liability, breach of express and implied warranties, negligent infliction of emotional distress, violation of consumer protection laws, and unjust enrichment.  (Id. at 27-44)  All of these claims relate to alleged defects in AMS's pelvic mesh products.  Plaintiffs claim that AMS's pelvic mesh products contain material that is "biologically incompatible with human tissue and promotes a negative immune response in a large subset of the population" that receives pelvic mesh implants, including "chronic pain and fibrotic reaction[s]."  AMS's pelvic mesh "products disintegrate after implantation in the female pelvis," causing "adverse tissue reactions, . . . chronic pain and functional disabilities." (Id. at 17-18)

The Complaint presents a long list of alleged design defects in AMS's pelvic mesh products (id. at 22-24), and asserts that AMS failed to provide adequate warnings, and underreported information about aftercare, adverse reactions, and injuries caused by the pelvic

mesh implants.  (Id. at 24-26).  The Complaint further alleges that AMS did not research, test,

design, or develop a safe and effective product, and claims that AMS's mesh implant products

are "unreasonably susceptible to degradation and fragmentation," "shrinkage," "contraction,"

and "gradual elongation and deformation . . . inside the body."  (Id. at 21-22)

III.   **PROCEDURAL HISTORY**

As noted above, the Complaint was filed on March 13, 2020, in Supreme Court of

the State of New York, New York County.  (Cmplt. (Dkt. No. 11-1))

Mount Sinai South Nassau filed its answer on June 18, 2020, along with a demand

to change venue, a demand for a bill of particulars, and discovery requests.  (Notice of Removal

(Dkt. No. 11) ¶ 11)  Dr. Garely filed his answer on June 30, 2020, along with a request for a bill

of particulars.  (Pltf. Br., Ex. C (Dkt. No. 32-3); Ex. H (Dkt. No. 32-8))

On June 30, 2020, AMS filed a notice of removal in this District, asserting

diversity of citizenship jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  (Notice of

Removal (Dkt. No. 11))  AMS acknowledges that the Medical Defendants are not diverse, but

contends that they "were fraudulently joined for the sole purpose of defeating removal."  (Id.

¶¶ 7, 29)

On July 2, 2020, Mount Sinai South Nassau moved in state court to transfer venue

to Nassau County.  (Pltf. Br., Ex. J (Dkt. No. 32-10))

On July 30, 2020, Plaintiffs moved to remand this case to state court (Pltf. Mot.

(Dkt. No. 25)), arguing that there is no diversity between Plaintiffs and the Medical Defendants,

who are all New York residents or corporations, and that "Plaintiff has potentially legitimate

medical malpractice claims" against Dr. Garely.  (Pltf. Br. (Dkt. No. 32) at 6)  Plaintiffs also

argue that the Medical Defendants have "participated in the state court action in a substantial

way, showing a clear intent to consent to the proceeding in state court" and waiving their right to removal.  (Id. at 5)

## DISCUSSION

## I.    LEGAL STANDARDS

"'Generally, a defendant in an action pending in state court may remove that case to federal court only if it could have originally been commenced in federal court on either the basis of federal question jurisdiction or diversity jurisdiction.'"  Audi of Smithtown, Inc. v. Volkswagen of Am., Inc., No. 08–CV–1773 (JFB)(AKT), 2009 WL 385541, at *3 (E.D.N.Y. Feb. 11, 2009) (quoting Citibank, N.A. v. Swiatkoski, 395 F.Supp.2d 5, 8 (E.D.N.Y. 2005) (citing 28 U.S.C. § 1441(a)).  It is axiomatic that federal courts only have diversity jurisdiction when there is complete diversity between the parties – that is, when all plaintiffs are citizens of different states from all defendants.  See 28 U.S.C. § 1332; Lincoln Prop. Co. v. Roche, 546 U.S. 81, 88 (2005); Advani Enters., Inc. v. Underwriters at Lloyds, 140 F.3d 157, 160 (2d Cir. 1998). In other words, if any plaintiff shares citizenship of the same state as any defendant, complete diversity does not exist and diversity jurisdiction is lacking.  Diversity jurisdiction is determined at the time of removal.  See Grupo Dataflux v. Atlas Global Grp. L.P., 541 U.S. 567, 570-71 (2004); United Food & Com. Workers Union, Local 919, v. CenterMark Prop. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994).

On a motion to remand, "[t]he party seeking to preserve removal has the burden of proving that subject matter jurisdiction exists."  S.M. v. Oxford Health Plans (NY), Inc., No. 12 CIV. 4679 (PGG), 2013 WL 1189467, at *2 (S.D.N.Y. Mar. 22, 2013) (citing Pan Atl. Grp. v. Republic Ins. Co., 878 F. Supp. 630, 638 (S.D.N.Y. 1995)).  "'Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of

6

establishing that removal is proper.'" Goel v. Ramachandran, 823 F. Supp. 2d 206, 210

(S.D.N.Y. 2011) (quoting United Food & Com. Workers Union, Local 919, 30 F.3d at 301). The

Second Circuit has instructed that, "out of respect for the limited jurisdiction of the federal courts

and the rights of states, [a court] must resolve any doubts against removability." In re Methyl

Tertiary Butyl Ether Prods. Liab. Litig. ("MTBE"), 488 F.3d 112, 124 (2d Cir. 2007) (internal

quotation marks and alteration omitted); see also Anwar v. Fairfield Greenwich Ltd., 676 F.

Supp. 2d 285, 292 (S.D.N.Y. 2009) ("Any doubts regarding the propriety of removal are

resolved in favor of remand, and 'federal courts construe the removal statute narrowly.'"

(quoting Lupo v. Human Aff. Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994))).

## II.    ANALYSIS

### A.    Whether Dr. Garely and Mount Sinai
### South Nassau Were Fraudulently Joined

It is undisputed that complete diversity does not exist as the parties are currently

constituted. AMS nonetheless contends that this Court has jurisdiction under 28 U.S.C. §§ 1332

and 1441, because there is complete diversity among Plaintiffs and the "properly joined"

Defendants.[7] (Notice of Removal (Dkt. No. 11) ¶¶ 15-22) According to AMS, Plaintiffs

fraudulently joined the Medical Defendants, "because the medical malpractice claim is barred by

the statute of limitations." (Id. ¶¶ 31-32)

Under New York law, the statute of limitations for medical malpractice claims is

two and a half years. N.Y. C.P.L.R. § 214-a. Here, the Complaint pleads that Altman was

treated by the Medical Defendants from April 26, 2012 to September 1, 2015. The Medical

---

[7] There is no dispute that the amount in controversy exceeds $75,000. (See Notice of Removal (Dkt. No. 11) ¶¶ 23-28)

Defendants' treatment of Altman thus ended approximately four and a half years before March 13, 2020, when the Complaint was filed.  (Cmplt. (Dkt. No. 11-1) at 10-15)

Given that Plaintiffs' claims against the Medical Defendants are time-barred, AMS argues that there is "no possibility" of a recovery against the Medical Defendants, and accordingly Plaintiffs' joinder of the Medical Defendants is fraudulent and should not hinder this Court from exercising diversity jurisdiction.  (Notice of Removal (Dkt. No. 11) ¶ 33)

"[A] plaintiff may not defeat a federal court's diversity jurisdiction . . . by merely joining as defendants parties with no real connection with the controversy."  Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 460-61 (2d Cir. 1998).  The Second Circuit has articulated the following standard for fraudulent joinder:

> In order to show that naming a non-diverse defendant is a "fraudulent joinder" effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court.  The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff.

Pampillonia, 138 F.3d at 460-61 (footnote omitted).  "To determine whether a claim is stated against the non-diverse defendants, a court applies state law, including its pleading standard."  M.S.S. Const. Corp., 2015 WL 6516861, at *9 (citations omitted).

"While the Second Circuit has not ruled on the issue, various courts have held that, 'if the statute of limitations has run on a cause of action against a non-diverse defendant, the court may – and in some jurisdictions, must – find joinder of that defendant to be fraudulent.'"  Fradianni v. Protective Life Ins. Co., No. 3:09-CV-1421 (JCH), 2010 WL 11661410, at *4 (D. Conn. Jan. 28, 2010) (quoting Riverdale Baptist Church v. Certainteed Corp., 349 F. Supp. 2d 943, 949 (D. Md. 2004) (collecting cases)).  Courts in this Circuit have concluded that the "no

possibility" of recovery test is met where an action is time-barred.  See Sanchez v. Univ. of Pennsylvania Museum of Archaeology & Anthropology, No. 04 CIV. 1253 (JSR), 2004 WL 1621184, at *1 (S.D.N.Y. July 20, 2004) (denying remand motion where "there is no possibility that plaintiffs could prevail in New York state court on their one and only claim against [a non-diverse defendant] . . . because such a claim is plainly time-barred under New York law"); City of Syracuse v. Loomis Armored US, LLC, No. 5:11-CV-00744 MAD, 2011 WL 6318370, at *6 (N.D.N.Y. Dec. 15, 2011) (denying remand motion where plaintiff's claims were time-barred under New York law).

Plaintiffs argue, however, that the practice of removing a case from state court based on fraudulent joinder, and asserting a statute of limitations defense, "has been soundly rejected."  (Pltf. Br. (Dkt. No. 32) at 8)  In support of this argument, Plaintiffs cite Saveria JFK, Inc. v. Flughafen Wien, AG, No. 15-CV-6195 (RRM), 2016 WL 11263673, at *8 (E.D.N.Y. May 3, 2016), report and recommendation adopted, 2017 WL 1194656 (E.D.N.Y. Mar. 30, 2017).  Saveria JFK is not on point.

In Saveria JFK, the defendant filing a notice of removal argued that all of plaintiffs' claims – not just those specific to the non-diverse party – were time-barred.  Id. ("[D]efendant contends that every claim that [the non-diverse party] does (or could) assert is . . . time-barred. . . . To the extent that the claims pleaded (or implied) in the complaint are time-barred, this would be true for all of the plaintiffs' claims, not only [those against the non-diverse party]." (emphasis in original)).  The Saveria JFK court suggests in dicta that, in this context, a fraudulent joinder argument should not be heard, and the defendant should take his statute of limitations argument to the state court:

> As a preliminary matter, this Court questions whether defendant's statute of limitations
> argument should even be heard on this remand motion.  To the extent that the claims

pleaded (or implied) in the complaint are time-barred, this would be true for <u>all of the plaintiffs</u>' claims, not only Sardana's.  <u>See id.</u> at 23 ("[A]ll of [p]laintiffs' claims – and unasserted claims discussed in their motion papers – sound in defamation.") (emphasis added); <u>id.</u> at 24-25 (arguing that any unasserted fraud claims would be time-barred); <u>id.</u> at 26 (arguing that plaintiffs' tortious interference claims are time-barred under the ordinary statute of limitations for that tort); <u>id.</u> at 27 (arguing that plaintiffs' prima facie tort and breach-of-fiduciary-duty claims are time-barred under the "ordinarily applicable statute of limitations periods" for those torts).  In arguing that Sardana has no possibility of stating a timely claim, and thus was fraudulently joined as a plaintiff, defendant is essentially asking the federal court to dismiss the claims of <u>all plaintiffs</u> as untimely.  This should not be the Court's focus on a motion for remand based on fraudulent joinder.  Defendant's remedy against untimely claims is to assert its statute-of-limitations defense in state court, not to remove the action to federal court.  <u>See, e.g.</u>, <u>Intershoe</u>, 97 F. Supp. 2d at 475.

<u>Id.</u> at *8 (footnotes omitted).  The magistrate judge went on to recommend that plaintiff's motion to remand be granted, because defendant had not shown that all of plaintiff's claims were time-barred.  <u>Id.</u> at *9.

       <u>Saveria JFK</u> has no application here.  Unlike in <u>Saveria JFK</u>, AMS is not arguing that all of Plaintiffs' claims are time-barred.  Instead, AMS contends only that Plaintiffs' medical malpractice claims against the non-diverse parties are time-barred.  (Notice of Removal (Dkt. No. 1) ¶¶ 29-33)

       <u>Rose v. Horan</u>, No. 17-CV-6408 (MKB), 2018 WL 4344954, at *5 (E.D.N.Y. Sept. 11, 2018) – also cited by Plaintiffs (Pltf. Reply Br. (Dkt. No. 33) at 5) – is likewise not on point.  There, the non-diverse party was a company against whom plaintiff asserted a number of derivative claims.  <u>Rose</u>, 2018 WL 4344954, at *3.  In ruling that the company was not fraudulently joined, the court determined that certain of the derivative claims were not time-barred.  <u>Id.</u> at *5-6.  Accordingly, defendant had not demonstrated that there was no possibility of a recovery against the non-diverse defendant.  <u>Id.</u> at *6.

       In sum, this Court must go on to determine whether AMS has "demonstrate[d], by clear and convincing evidence," that Plaintiffs' claims for medical malpractice against the non-

diverse Medical Defendants are time-barred.  If so, the Medical Defendants were fraudulently joined.

The statute of limitations for a medical malpractice claim in New York is set forth in C.P.L.R. § 214-a, which provides as follows:

> An action for medical, dental or podiatric malpractice must be commenced within two years and six months of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure.

N.Y. C.P.L.R. § 214-a.  An exception to this limitations period applies "where the action is based upon the discovery of a foreign object in the body of the patient."  In such cases, "the action may be commenced within one year of the date of such discovery or of the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier."  Id.  The "foreign object" exception does not apply to "a chemical compound, fixation device or prosthetic aid or device," however.  Id.

New York courts have construed the "foreign object" exception narrowly.  "In determining whether an object which remains in the patient constitutes a 'foreign object,' the courts should consider the nature of the materials implanted in a patient, as well as their intended function."  Rockefeller v. Moront, 81 N.Y.2d 560, 564 (1993).  Where, for example, surgical clamps are "negligently left in a patient's body after the completion of a medical procedure," the "application of a discovery rule is justified . . . because the presence of the foreign object . . . did not create a danger of false or belated claims, did not raise questions as to credibility, and did not rest on professional diagnostic judgment or discretion."  Id. at 563 (internal quotations and citations omitted).  Where "surgical clamps, scalpels, and sponges" have been left in a patient's body, "no assessment of the medical professional's expert judgment or discretion in failing to remove them is necessary to establish negligence."  Id. at 564.

11

"By contrast, items which are placed in the patient with the intention that they will remain to serve some continuing treatment purpose constitute 'fixation devices'" and are expressly excluded from the discovery rule.  Id.  New York courts have "rejected [the] argument that the negligent failure to remove a 'fixation device' from a patient's body transforms that material into a 'foreign object.'"  Id. at 565.  Accord LaBarbera v. New York Eye and Ear Infirmary, 230 A.D.2d 303, 307 (1st Dept. 1997) (stating that the distinction between a foreign object and a fixation device turns on "whether the object was deliberately left inside the patient in the first instance").  Indeed, "it is well settled that an intentionally implanted device is not a 'foreign object' within the meaning of CPLR 214-a."  Jacobs v. Univ. of Rochester, 103 A.D.3d 1205, 1206 (4th Dept. 2013) (holding that a wire implanted in the patient's body during spinal fusion surgery did not fall within the "foreign object" exception where plaintiff argued that it "was not properly bent, twisted or placed when it was implanted").

Citing Walton v. Strong Mem'l Hosp., 25 N.Y.3d 554, 573-74 (2015), however, Plaintiffs argue that "there is a split [of authority in New York] as to whether [a] medical device falls within the 'foreign object' exception of CPLR 214-a."  (Pltf. Br. (Dkt. No. 32) at 7)  Walton is of no assistance to Plaintiffs.

In Walton, the New York Court of Appeals held that a "fragment [of a catheter used during surgery] qualifies as a foreign object" for purposes of CPLR 214-a's discovery rule.  Walton, 25 N.Y.3d at 557.  The catheter fragment at issue, however, was not meant to stay in the patient's body post-surgery, and "served no purpose whatsoever."  Id. at 573.  Here, by contrast, Plaintiffs assert in briefing (Pltf. Br. (Dkt. No. 32) at 2) – albeit not in the Complaint – that Dr. Garely implanted AMS's pelvic mesh product in Altman's body.  And while the Complaint does not plead that Dr. Garely implanted the pelvic mesh product in Altman's body, it does allege that

12

pelvic mesh products are intended to treat "stress urinary incontinence and pelvic organ prolapse."  (Cmplt. (Dkt. No. 11-1) at 5-6).

Ruane v. Niagara Falls Mem'l Med. Ctr., 91 A.D.2d 1176, 1177 (4th Dept. 1983), aff'd, 60 N.Y.2d 908 (1983) – also cited by Plaintiffs (Pltf. Br. (Dkt. No. 32) at 7) – is likewise not on point.  In that case, the court held that "the foreign object exception does not apply to an injury stemming from [an implant that was] allegedly contaminated at the time of implantation." Ruane, 91 A.D.2d at 1177.  Ruane thus provides no support for Plaintiffs' position here.

The Court concludes that Plaintiffs have not demonstrated that there is a "split of authority" in New York as to whether the "foreign object" exception applies to an intentionally implanted medical device.

To conclude:  Plaintiffs allege that Altman was under the medical care and treatment of the Medical Defendants from April 26, 2012 to September 1, 2015.  (Cmplt. (Dkt. No. 11-1) at 10-15)  Accepting these allegations as true, Plaintiffs' medical malpractice claims against the Medical Defendants expired on March 1, 2018.  Because the Complaint was filed on March 13, 2020 (see Notice of Removal (Dkt. No. 11) ¶ 1), Plaintiffs' claims against the Medical Defendants are time-barred.

Accordingly, AMS has satisfied its heavy burden to prove that Plaintiffs' medical malpractice claims against the Medical Defendants are time-barred.  Because Plaintiffs have "no possibility, based on the pleadings," of "stat[ing] a cause of action against the non-diverse defendant[s] in state court," Pampillonia, 138 F3d at 461, the Medical Defendants are fraudulently joined, and their citizenship does not demonstrate a lack of diversity jurisdiction.

## B.   Whether Remand Is Necessary in Light of the "Rule of Unanimity"

Plaintiffs contend that remand is required because of steps taken by the Medical Defendants – before and after the notice of removal was filed – to litigate this case in state court.

According to Plaintiffs, in taking these steps, the Medical Defendants waived their right to removal, and remand is required under the "rule of unanimity." (Pltf. Br. (Dkt. No. 32) at 4-6)

The statute governing removal procedure provides that "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). In this Circuit, district courts "have consistently interpreted the statute as requiring that all defendants consent to removal within the statutory thirty-day period, a requirement known as the rule of unanimity." Pietrangelo v. Alvas Corp., 686 F.3d 62, 66 (2d Cir. 2012) (internal quotation marks and citation omitted). "This rule 'advances the congressional purpose of giving deference to a plaintiff's choice of a state forum and of resolving doubts against removal in favor of remand.'" Bedminster Fin. Grp., Ltd. v. Umami Sustainable Seafood, Inc., No. 12 CIV. 5557 JPO, 2013 WL 1234958, at *5 (S.D.N.Y. Mar. 26, 2013) (quoting Zerafa v. Montefiore Hosp. Housing Co., 403 F. Supp. 2d 320, 328 (S.D.N.Y.2005)). "Courts have very little discretion – if any – to forgive a failure to comply with the rule of unanimity." Id. (internal quotation marks and citation omitted).

There are, however, "exceptions to this rule for defendants who have not been served, unknown defendants, and fraudulently joined defendants." Sherman v. A.J. Pegno Constr. Corp., 528 F. Supp. 2d 320, 330 (S.D.N.Y. 2007); see also Tamm Consulting v. Cincinnati Ins. Co., No. 18-CV-11415 (RA), 2020 WL 1144713, at *4 (S.D.N.Y. Mar. 9, 2020) ("'When a defendant is fraudulently joined, the Rule of Unanimity may be disregarded.'" (quoting City of Schenectady v. Am. Tax Funding, LLC, No. 12-CV-1026 (MAD/RPT), 2013 WL 1193340, at *4 (N.D.N.Y. March 22, 2013))); Gov't Emps. Ins. Co. v. Saco, No. 12-CV-5633 NGG MDG, 2015 WL 4656512, at *5 n.8 (E.D.N.Y. Aug. 5, 2015) (upholding removal where non-consenting defendants were fraudulently joined).

Because the Medical Defendants were fraudulently joined, it matters not whether they took steps to litigate this case in state court before or after the notice of removal was filed.

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs' motion to remand is denied.  The Clerk of Court is directed to terminate the motion (Dkt. No. 25).

Dated:  New York, New York
        March 19, 2021

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

15